Good morning everyone. The first argued case this morning is number 15, 1973, in Re Lemay, Mr. Davies. Good morning Your Honor. May it please the Court. The PTAB's written decision in this case falls short of permissible federal agency decision making. The public and this Court depend on a process that adequately explains when a patent will issue and when it will not issue. As this Court put it, there is a need for specificity. Here, the result of an eight-year agency process is a single sentence, a rejection of Apple's patent application. And that sentence teaches the public nothing and renders review by this Court unnecessarily difficult. And the predictable result of such a process is a mistake. Back in 2007, the Lemay application taught a graphical user interface for mobile browsing of online videos. The PTO now agrees there is no interface like that in the prior art. The decision below does not even mention the principle figure now relied on by the PTO. On this record, the only possible outcome is that... But you still have the problem of the breadth of the claims. Do you not? Even agreeing that at their core there is patentable substance? So, thank you Your Honor. I'm happy to talk about the claims. The claims are actually not broad. There were six quite specific elements. And so, no, there's no problem. But they certainly haven't pointed to why... There's no commentary by the PTO about the breadth of the claims, for example. They pointed to a couple of figures. But Your Honor, if you'd like to turn to the claims, element six, for example, has... you have to hit the icon and then you get a list. There's elements about scrolling. There are elements about having multiple lists. It's not... it is not broad claims. There's nothing like these claims in Cook, for example. Nothing like these claims in any of the prior art. And if you look at what the PTAB said here, and it's at appendix seven, and it's really a remarkable sentence, what they say is, essentially there's a touch screen technology out there, fine, combined with Cook's icons and plurality of lists of information. That's the whole rationale for why they say the disputed claim limitations are invalid. And when you look at it, actually element six, which I was just talking about, is not even referred to by the PTAB. So, to the extent there's a problem, Your Honor, it's certainly not been articulated. And I think when you look at the record here, you won't find it. The PTAB relies heavily on figure 3B. And what figure 3B shows is the results of an Internet search. You can't push an icon on 3B itself. And so that doesn't match this element that we were talking about, element six. And the whole purpose of what we were trying to do, Your Honor, to go back to the claims, you obviously don't just read the claims. You have to look in light of the specification. And what we were trying to do when the iPhone came out was to let people easily browse online videos. We explained that with all the menu hierarchies, it was difficult to do that on a phone. And so we thought really hard about the user interface that would let users quickly find what they wanted. And so the purpose is very specific. And the claims read in light of that purpose cannot possibly be thought of as broad. I'm happy to continue, Your Honor. I'm here for you. When you come back to the PTAB's decision, that one sentence, that cannot possibly be adequate. Again, all they say is Cook's icons and pluralities of lists of information see Cook figure 3B. There's no effort to match the elements of our patent to figure 3B. Well, but if I interpreted the board's decision as adopting the examiner's findings, it does seem to me that the examiner went through element by element and mapped each of. I mean, you're absolutely right. I would rather see that in the board's decision with greater precision and detail. But if I read their decision, which I think it's fair to do, as having adopted the examiner's position on all of this, I think you'd be better served with moving on at this point. And I understand your argument on your criticism of the inadequacy of the explanation in the board's opinion. But I think you'd be better served moving on to the merits at this point of whether the record, including what the examiner said, supports the board's decision or not. Thank you, Your Honor. If I could just fight one of your assumptions here, which if this particular PTAP opinion, when you look at it, does not adopt the examiner's decision, what that sentence does is give a rationale. It does not adopt the decision below. So in terms of agency process, understanding what the agency did, they could have said we formally adopt. They could have even said we adopt. All they said is did not err in the one sentence. Well, then they also say we find that the evidence of record supports the examiner's finding, the Soren's touch, screen and finger gestures, see, for example, Sarah written in paragraph 37 and 43 combined with Cook's icons and plurality of lists, see Cook figure 3B, render the obvious. Yes. So I think it's not unreasonable to interpret the opinion as adopting the examiner's findings. But I do understand your point. So why don't you tell us what is missing from Cook and Saramin. I'm happy to go to the merits. One more point I'm going to make on the examiner. The examiner actually doesn't cite the figure 5 either. And that may not leap out of the papers. What they cite to is a particular feature of figure 5. So even if we rely just on the examiner opinion itself, it's just a particular portion of figure 5. The examiner before the PTAB in the briefing there does not rely on figure 5. But now to talk about figure 5. It's the same problem of element 6. There is no, if you just look at figure 5, there is no icon that responds to detecting a finger contact by throwing up another list at the same time. So again, figure 5, which is the media player, does not meet element 6, the 6th element of LeMay. Because there is no icon on there that responds to the finger by putting a list up at the same time. Well, if you tap on, say, most viewed, doesn't that throw a list up? Most viewed is our figure 5A. I think you need to cook figure 5. I'm sorry, am I not supposed to look at figure 5A? No, no, you're welcome to, but that's in our patent. Oh, I see. Okay, this is from your patent. This is LeMay's figure 5A. Yes, sorry, sorry. You're right, you're right. No, that's my fault. Okay, so if you look at, I'm happy for you to look at figure 5A. No, that doesn't help. It helps us. But if you look at figure 5, Your Honor, there is no icon to push here that's going to give you a list at the same time. It's actually helpful to look at 5A and understand how our technology works. But we have icons, we have lists, and when you push an icon, you get a different list. There isn't anything like that going on in figure 5. And since we're talking about figure 5, another one that's quite easy to access, Your Honor, is what we call the dual function element. What are you understanding element 6 as requiring? It says, in response to detecting a finger gesture on a respective icon in a plurality of icons, displaying on a touchscreen display of the portable device a corresponding list of information about online video items. So what... And you have to do it orally, no finger gestures. The key, Your Honor, is at the same time on element 6, which is not in the claimed language, but it's a natural reading of the way that prior elements are laid out, and it's certainly in the specification. But I don't have to rely on element 6. Dual function says, when I get a row, you can either press play or get additional information from that row. There's certainly nothing like that in figure 5 either. I sat here in both these briefs. Pardon? I sat here in both these briefs, and I won't try to put a finger gesture in the record, but spreading my fingers... No, I think it's important technology now, and one of the challenges I think Apple has in this case, Your Honor, is to get everybody back in the pre-iPhone mindset. Remember, this was 2007. This application was filed 2008. With respect, I don't think you knew those gestures, and I certainly didn't back then. And so that's what we did. We took this. Everybody knows now the success, but this is a particular interface to solve this particular problem. Another really excessive one, Your Honor, is claim 9, dependent claim 9. Before you move on, I'm looking at what the examiner said about element 6, and the examiner didn't cite figure 5 for the disclosure of element 6. He cited column 8, line 37 to 49 of Cook. Yes. So whether figure 5 has it or not, it seems to me isn't what the PTO found. They found that it was Cook that disclosed element 6 of your claim. So... Cook at that column 8, line 37 to 49. Yes, and you can hear the PTO's view is that that calls, that references figure 5. But as I started out discussing, Your Honor, if you go to those, the lines you just cited, it's all it's talking about is a particular feature of the player that when you press play, three songs are ready to go. It's not talking about figure 5. So I was actually, I was responding to Your Honor's concern about getting to the merits. I mean, the merits here, as the PTO has teed it up now, is figure 5. But you're right, Your Honor, that the examiner below does not invoke figure 5, just the particular lines that you mentioned. But the examiner thought that it would have been obvious to make that combination, and I didn't see a direct refutation of the issue that you're now facing in combination with Cook, for instance. Yes, so Your Honor, it's not, we have not framed it, and I don't think the PAN office has framed it as a combination case. The argument, everybody agrees what the prior art is here, and we've now focused on figure 5. And the question is whether the elements, the claims that you looked at, Your Honor, match up, teach figure 5. It's not really a combination question. It's a question of is there a responding to an icon teaching here? Is there the single list within the multiple lists here? Is there a configuration icon? So dependent claim 9 says we're going to give the users a configuration icon so they can pick which icons start on the screen. There's nothing like that in Cook on figure 5. There's no configuration icon at all. So no matter how specific you want to get, Your Honor, with these claims, they do not match up to figure 5. And there isn't a question of combining or not. It's just not here. Well, you tried to separately appeal a number of dependent claims in your brief. I'm not including 4 and 9 in that list. Do you now agree that you've waived the right to separately argue these claims? Because in your brief to the board, you explicitly said that they are not separate from claim 1. Yeah, we're not fighting that, Your Honor. So you've given up on that. So you're just sticking with 4 and 9. Why don't you jump to claim 9? Okay, so claim 9, Your Honor, is the configuration icon claim that we were just discussing. But if we come back to the actual text of claim 9, we can just start with the first three words of the second element, a configuration icon. And just to walk you through that, Your Honor, a configuration icon, if you go to figure 5F, Your Honor, figure 5F has an edit icon. And so when the user presses that edit icon, they can now configure the icons below. So that's what we're claiming in figure 9. And the question is whether there's anything remotely like that involved. What allows the user to move the icons on that first page to prioritize to their own preferences? And there just isn't anything like that in Cook. What the PTAB points to is that the retailer that is in charge of this interface has some ability to change the ordering of the playlist. That bears no resemblance to the edit icon that we were talking about. So in our claim, Your Honor, we have configure icon. Configure icon, we have a picture of the configure icon. And the best they can do is talk about ordering of a playlist on figure 5. It's not close. And so we can talk about the merits all day. There's no reason to do anything but reverse this case. There's no dispute about what the prior art means. There's no dispute about the scope of the prior art. It's just a question of whether it teaches it. And the configure icon could not be clearer. Okay. Let's hear from the office. Thank you, Your Honor. Mr. Warrick. Good morning, Your Honors. May it please the Court. I'd like to start off by pointing out that this case, contrary to Apple's arguments, is not about the iPhone video app. And we've had a lot of references to the look and feel of the iPhone, of specific apps. But what we're looking at here are three specific claim elements in Claim 1. These are worded in very generic language with very nonspecific terms. And each of them is found in the Cook reference. What plurality of icons is displayed at the same time as the display represented by Figure 5? So the plurality of icons in Element 2 are shown in Figure 3B of the Cook reference. And what 3B references are search results, and in that case a search for Mandy Moore, the recording artist. And what we have are three results. And on the left we have pictures of the album covers as well as a listen button. And there's other information displayed as well. So what you're telling me is it's not in Figure 5? It's not in Figure 5, and we haven't argued that it is, and the examiner did not rely on Figure 5. The examiner relied on Figure 3B and accompanying text in the specification. So specifically for Element 1, the list of information is displayed in those search results. For example, the recording artist, the name of the album, the release date, the price, as well as the album cover and the listen icon. That portion on the left of the search results in Figure 3B, that has been mapped as the icon. You have a plurality of them, in that case three for the three search results, and each corresponds to a list of information about those specific albums. It's a static list, though, isn't it? It's a list that's generated in real time in response to an Internet search. So in this case, someone entered Mandy Moore. There's another example of searching for The Beatles, which gives a different result in Figure 2 of Cook with one result. And notably, some of those results in Cook can include video as well as audio. There's been some debate about whether Cook discloses video. Cook's broadly directed to media. It even specifically mentions video in Column 6. But in any event, Figure 3B clearly discloses Elements 1 and Element 2. I'd like to turn, though, if I can, to Figure 2, Element 6, because that's been identified by Council as... Well, and when you discuss the elements, tell us where you find the motivation in the art to select the particular elements that you are selecting and directing our attention to and combine them into the rest of the combination. Well, Your Honor, in this case, respectfully, the dispute is about whether these elements are disclosed in Cook. In the reply brief, Apple has even said, Cook is the only relevant reference for purpose of this appeal. Saarinen was also added as part of the combination to add the touchscreen aspect and specifically using your finger as an input on a touchscreen for the interface. But that combination was not argued by Apple to the board. It was not argued to the examiner, and it's also... Well, it was argued before us until they got the decision of the board. How were they to know where the emphasis was? So let's not say that their best arguments were not argued. Well, Your Honor, perhaps I misspoke. The most important thing about the combination of Cook and Saarinen is that it's not being argued to this court either. There's no argument in Apple's briefs that it was improper to combine those two references. Is that what the office is relying on, the failure of argument? In which case, perhaps it should go back for re-argument. Your Honor, counsel I'm sure will correct me if I'm wrong. I don't believe that the combination of the two is disputed, but in any event, the examiner did articulate a motivation to combine. It's in the record at A676, and he said that someone would be motivated to take the touchscreen features that were taught in Saarinen and use them to enhance the lists and icons and media streaming that were disclosed in the Cook reference. And that was not disputed to the board, and that's really not, as I understand, what's being disputed by LeMay's attorneys here to this court on appeal. The dispute now is whether Cook teaches specific limitations. And in terms of Claim 1, which is representative, we're looking at Limitations 1, 2, and 6. Now 1 and 2 relate to displaying lists of information and corresponding icons, which are in Figure 3B. Element 6 relates to gesturing on one of those icons and then displaying a corresponding list of information. And what the examiner relied upon, Element 6, was the fact that you could click on one of those listen icons in Figure 3B. It's on the left under the album covers. If you click on one of those, it will launch the media player that's depicted in Figure 5. Now I'll agree that the examiner did not specifically say, look at Figure 5. What the examiner did was cite portions of the specification that are referencing the media player that's described in Figure 5. And when we look at those disclosures, it's clear that that's what happens. You click on the listen icon, the media player comes up, and if you look at Figure 5, there's just a vast collection of information that's displayed. Further information from that shown in Figure 3B. Just for example, you also have the label for the album, you have the copyright date, you have reviews, a track listing, recommendations. Those are all shown in Figure 5. Now there has been some dispute by Apple about what a corresponding list of information needs to be. Apple, again going back to the iPhone video app, says that when you click on one of the icons, what should be displayed is the same list of information that's referenced in Elements 1 and 2, the list that corresponds to the icon. Well, I hear you arguing, Cook. The board, in its opinion, identified five issues, all of which were a combination of Cook and Saarinen. Are you now saying that there's another ground of rejection, of anticipation, that you're raising before us? No, Your Honor. What I'm saying, trying to be clear about this, is simply that the combination aspect of Saarinen with Cook is not something that's disputed by the parties. And again, I'm certain I'll be corrected if I'm wrong about that. What's disputed is that the combination in their claims is obvious. In view of these references, they don't dispute that these references exist, and they don't dispute the content of the references. And respectfully, Your Honor, they also did not dispute the combination of the references. But they were combined. But we're looking now for the motivation, the suggestion, the reason why the combination would have been obvious, is that not the issue on appeal? Obviousness is the issue on appeal, and certainly we're looking to whether all of the limitations are there. And the broader question is, yes, whether they are taught and would be obvious in light of all of the references. The arguments that have been posed by the appellant here have to do with whether specific elements are disclosed. Let me go back to what you were talking about before, combination. That is, that Cook teaches clicking on the price link results in transmitting information about the name of the album to the internet retailer. That's at page 40 of your red brief. How does that meet the claim limitation that the second tap gesture results in displaying additional information on the touchscreen display of the portable electronic device? Certainly. So that relates to element five of claim one. And I'd like to just note that that, we argue, has been waived because it was not argued to the board. But to answer your question, the best disclosure in Cook, if you look at the very bottom of column eight and the top of column nine, additional product information can be provided in the reviews 503 tab. This is customizable to integrate with the customer's established e-commerce offering. So specifically that's talking about when you go to purchase an album, which can be done in different ways in Cook, but one of them is by clicking on the price in the search results. And this specific quote that I just gave you from columns eight and nine was cited by the examiner with reference to claim 23, which is further related to this additional information that you can receive by clicking on the price information. And specifically claim 23 says that the additional information can be about related albums. And I apologize, related albums is a separate site, but the reviews are additional information. The review of the album is additional information that was not already displayed and that disclosure clearly says that when you click on an album to purchase it, that's part of the information that will be transmitted to the user. Can you turn for me to figure 5A of LeMay, not figure five of the prior art? Yes. So if I'm looking, this is a picture of pretty much an iPhone screen. The claims talk about icons. Icons are the little buttons across the bottom that you would click and they would take you to something else, correct? That's what icons are. I mean, we all have some version of a smartphone, so I think most people have a sense of what an icon is, right? Yes, you are. But then these claims talk about pluralities of lists and lists and lists, and they don't say playlists, but lists of information, which are also discussed as playlists. Like a list of information on this figure 5A would be Pokemon theme music, I assume that's Saturday Night Live, digital short, maybe I'd like to see that one, guitar, shoes, quick change artists. That would be a list, not a plurality of lists, but that would be a list, right? I think as Apple reads figure 5A, this entire selection, 2330-1 in figure 5A, they say that's the list. Okay, but that's the list of information. The icons are not lists of information. Not the way this patent defines them. The patent clearly talks about icons throughout, and the icons are the buttons you click on to get lists of information. Certainly on figure 5A, the icons are distinct from the list in that figure, yes. Okay, so now let's turn to claim 9. Because one place where I am struggling a little bit with the board's, and in fact the examiner's decision, is the idea that the configuration icon limitation has been met by what is referred to by the examiner in Cook and Saarinen. I'm not sure if I'm saying that right. So what this says is you have to have a user interface for configuring icons. Now we all know what this means. This means moving icons around on your screen, right? Like any time I want to, you know, like my kids. I have this stupid link with their phone, and they download Clash of Clans or some dumb game and it appears on my phone, and so I want to get rid of it or move it. Certainly don't want it on my start screen. You know, that kind of thing. Moving icons around. That's what this is talking about. An interface for configuring which icons correspond to at least some of the plurality of lists. Am I right? I mean, do I have the right sense of what this is about? It talks about configuring icons, and it distinguishes the icons right in the limitation from lists. What am I missing? You know where this is going. Certainly that's part of configuration. And I agree that in the terms of the LeMay application, it's talking about the—it uses the example of the video app where the icons and the lists are distinct items. But we would argue that— The claim, in fact, has the most distinct items. Not just in the specification. Well, I guess the claim is part of the spec. Right. But the claim says, configuring icons which correspond to at least some of the plurality of lists. So the claim itself sets out lists on the one hand and icons on the other. Yes, Your Honor. And I believe where Your Honor is going is, we have an argument that for Elements 4 and 5, that a portion of the row of the list— I don't know what Elements 4 and 5 are, and I don't even want to talk about that. I'm talking about Claim 9. Okay, Claim 9. Claim 9, which requires an interface for configuring icons that allows you to move icons around. And that claim, Claim 9, actually distinguishes icons from lists in that exact element, not even in a different element. But all I can tell that the board and the examiner cited was a reference in Cook which allows you to edit a playlist, not move icons around, but edit a playlist. So I'm not saying from editing a playlist, it wouldn't be obvious to maybe be able to configure icons, but that's not what the board found, and I can't make that finding for the first time on appeal. So what do I do? Tell me how Cook discloses editing icons. Well, so first of all, there's the broad teaching of Cook that you have the ability to configure what's shown on the user interface, and I think fairly well— That's not what the board or the examiner pointed to. They pointed to Cook Column 8, line 40 to 50. So show me where Cook Column 8, line 40 to 50 discloses this element, because that's the only thing the examiner pointed to, and they also pointed to Seren and one particular paragraph, but that's just about touch screens. So tell me what in Cook Column 8, line 50 to 60, which is where both the board and the examiner said this element is affirmatively disclosed. Now, it would be obvious in light of what's disclosed, but it's actually disclosed there. Show me where that discloses it. So, Your Honor— It's a long question. You can answer. I don't think anybody's going to cut you off. Thank you, Your Honor. So in terms of what is literally disclosed in that portion of Column 8 that's cited by the examiner, we would agree that there's not a specific recitation of moving icons. What there is, is a disclosure of actions the user may take that will change the appearance of the user interface that's being displayed on the screen. The examiner referenced that portion of the spec, and I think it's a fair reading of that to say that this discloses a general edit or configuration ability, and when the examiner discussed Claim 9, he pointed out that in the LeMay specification, that is only tied to a general edit icon. And so we would submit that that is sufficient teaching. There are also other portions of Cook that could satisfy that limitation that were not specifically cited by the examiner. Okay. Thank you. Any more questions? No, but thank you. That was a very good and honest answer to my question. I appreciate it. Thank you, Mr. Warrick. Mr. Davies. Just a few points, Your Honors. Judge Moore, if we want to rely on the examiner's opinion in this case, I urge everyone to look at Appendix 671, where this examiner says, and this is a quote, Citations are exemplary. Anyone skilled in the art ought to be able to understand a cited reference in its entirety. And that was the tenor of this examiner's attitude, was just go read the prior art. That's enough. And that is not enough. This Court has been clear that what matters in the obviousness context in particular is an explanation. KSR is all about unpacking the reasons for why you determined something to be obvious. We submitted a 28J letter recently. No response from the BTO about mere conclusory statements are not enough. I mean, this Court is correct. But this examiner didn't make mere conclusory statements. He went element by element and pointed to precise locations and two different references where each element was present. I don't know that it's a fair characterization. You're on firmer ground when you say the Board sort of glossed over things. But I don't feel like your criticism of this particular examiner is warranted. We can agree. We can leave that as you want, Your Honor. I mean, the Court needs to give guidance to the PAN office generally then about what the PTAB's role in this process is. We did not mention Figure 5 in our opening brief. We also never mentioned motivation to combine. No, we're not challenging motivation to combine. But Figure 5 is not in our opening brief because it's not in the PTAB's decision and it's not in the examiner's brief to the PTAB. We can't have a process where the arguments get fleshed out so late in the day. That is not the process that this Court wants. And with credit to the briefing by the PTO, we pointed out that there's a lot of shifting around of elements mapped onto different figures because it doesn't really hold up. And that's what happens when you have a process that doesn't explain itself, as Your Honor has been consistently insisting the PAN office do. So, you know, on this record, eight years in, we had a two-year delay from briefing to argument. There was nothing else anybody could say about this prior art that has not been said. And we believe that the appropriate outcome here, particularly in light of recent decisions from this Court, is reversal. If there are no further questions. No more questions. No more questions. Thank you, Mr. Davis and Mr. Warrick. The case is taken under submission.